OPINION
Mark T. Corbett appeals from a judgment of the Vandalia Municipal Court, which found him guilty of disorderly conduct and resisting arrest after overruling his motion to suppress evidence.
On January 3, 1999, Corbett was charged with resisting arrest and disorderly conduct related to an altercation at his home with a sheriff's deputy who was responding to a 911 call. Corbett pled not guilty to the charges and, on February 11, 1999, he filed a motion to suppress. The trial court conducted a hearing on March 25, 1999, after which it denied the motion to suppress. A bench trial was conducted on July 13, 1999, and Corbett was found guilty as charged. He was sentenced to ninety days in jail and was fined $100 for disorderly conduct, with the entire sentence and $50 of the fine suspended, and he was fined $700 for resisting arrest, with $500 suspended.
Corbett raises one assignment of error on appeal.
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS THE WARRANTLESS ENTRY AND ARREST.
Corbett claims that all of the evidence gathered against him while the sheriff's deputy was in his apartment should have been suppressed because the deputy was not lawfully in the apartment.
The state's evidence at the hearing on the motion to suppress established the following.
On January 3, 1999, Montgomery County Sheriff's Deputy Kent Saunders was dispatched to 2876 Stop Eight Road, Apartment 2, in response to a call about a domestic dispute. The call had been placed by Corbett's mother, Patricia, who apparently lived in the apartment with him. Patricia Corbett had reported to the dispatcher that her son was very upset and was threatening to harm himself or others with a BB gun. As Saunders parked his cruiser and began to approach the apartment building, he received a second dispatch reporting that the BB gun in question had apparently been put away. The dispatcher, however, did not cancel the dispatch, and Saunders testified that it was the department's policy to always respond to 911 calls to assure that no problem existed. Saunders heard Corbett yelling loudly and angrily as he approached the apartment. He listened outside the door for ten to fifteen seconds in an attempt to ascertain what was going on inside. Based on what he heard outside the door and the information he had received from the dispatch, Saunders feared that an act of violence was being committed or was about to be committed in the apartment. He knocked, announced that he was from the sheriff's department, and opened the unlocked door.
When Saunders entered the apartment, Corbett was yelling and "acting in a very turbulent manner" as if he might be ready to assault someone. Saunders asked Corbett to calm down and take a seat and asked him what was going on. Corbett's mother left the room to check on the sewage backup in the bathroom that had apparently sparked the dispute between Corbett and his mother. Corbett told Saunders that his mother had poked him with a vacuum cleaner hose and then, after having calmed down for a few moments, Corbett "all of the sudden just went off again," agitated and using profanity. Saunders again instructed Corbett to sit down, which he did, but then Corbett "jumped up out of the chair" shouting "[j]ust fuckin' arrest me" and walked toward Saunders. Corbett shoved Saunders with two hands, and then Saunders pushed Corbett into a chair and ordered him to sit. Corbett tried to get up, and Saunders pushed him into the chair again. Saunders activated the emergency signal on his portable radio to get backup assistance. He managed to handcuff Corbett and to pin him in the chair until other deputies arrived.
Corbett presented his mother's testimony at the hearing. She contradicted Saunders' testimony insofar as she claimed that she had not heard him knock or identify himself before entering the apartment. Patricia Corbett testified that she had tried to lead Saunders down the hall to the bathroom to show him the sewage problem, but he did not follow. Patricia Corbett remained in the bathroom for awhile at that point, so she did not witness the altercation between Saunders and her son. She claimed that, when she did return to the living area, Saunders ordered her to "set down" [sic] and to "shut up," even though she "hadn't said anything."
Although warrantless searches and seizures are per se
unreasonable under the Fourth Amendment, a few exceptions to this rule are well-established. Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 514. The exceptions include situations involving exigent circumstances. Mincy v. Arizona (1978),437 U.S. 385, 392-393, 98 S.Ct. 2408, 2413. State v. Roach (1982),8 Ohio App.3d 42, 43; State v. Morris (Nov. 29, 1989), Montgomery App. No. 10992, unreported. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Mincey,437 U.S. at 392-393, 98 S.Ct. at 2413; Parma v. Jackson (1989),58 Ohio App.3d 17, 18; Dayton v. Johnson (Feb. 5, 1999), Montgomery App. No. 17184, unreported. When the officers in question have reasonable grounds to believe that an emergency exists, they have a duty to enter the premises and investigate, provided that the warrantless search is strictly circumscribed by the exigencies which justify its initiation. State v. Applegate (1994), 68 Ohio St.3d 348,349-350.
Based on the evidence presented, the trial court reasonably concluded that Saunders had entered Corbett's apartment lawfully and that Corbett therefore had not been entitled to have the evidence against him suppressed. Corbett does not dispute that Saunders was responding to a 911 call placed by his mother or that the sheriff's department's policy required Saunders to follow through on the call even though Patricia Corbett had indicated to the dispatcher that the situation had been diffused. The trial court also could have reasonably credited Saunders' testimony that he had knocked and announced his presence before entering the apartment despite Patricia Corbett's statement that she had not heard him do so. Furthermore, the loud and angry yelling that Saunders heard outside the apartment door — which the trial court specifically noted from the bench in overruling the motion to suppress — was consistent with the first dispatch and indicative of a potential emergency situation which Saunders was duty bound to investigate. Moreover, Saunders' activities inside the home did not exceed the exigency which had justified his entry. Thus, the trial court properly overruled the motion to suppress.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.